13435

INMAN SCHOOL DIST. NO. 26 OF SPARTANBURG COUNTY v. LAW *ET AL.*

(164 S. E., 839)

*Messrs. Lyles & Daniel,* for appellant.

*Messrs. Nicholls, Wyche & Russell,* for respondents.

June 25, 1932.

The opinion of the Court was delivered by Mr. Justice Blease.

The facts of this controversy, agreed upon by the parties, are as follows:

The government of Spartanburg County is vested in the county board of Spartanburg County (Act No. 196 of 1925 [34 St. at Large, p. 296], Sections 4755, 4756, 1932 Code), composed at present of the defendants John A. Law, A. B. Taylor, and R. F. Bagwell. Under the provisions of the laws referred to, the county board has complete executive control of the financial and business affairs of the county, and no claim or account, except salaries fixed by law, may be paid without the approval of this board.

Subject to the directions as to financial matters on the part of the county board, the educational affairs of the county are under the supervision of the county board of education, as provided for in the General School Law of the State, and that board is now composed of the defendants J. F. Brooks, as county superintendent of education, Dr. F. G. Morgan, and Dr. B. J. Workman.

Prior to the year 1929, certain school districts in Spartanburg County expended more money in the operation of their schools and for the payment of teachers' salaries than was received by those districts from all sources. This practice continued for several years, and resulted finally in the building up of considerable overdrafts or deficits in the accounts of those districts, until, on June 30, 1928, the aggregate of the deficits of such school districts amounted to $97,250.27. By Act No. 553 of 1929 (36 St. at Large, p. 989), the General Assembly, with the view of curbing the practice of overexpenditures and to ultimately eliminate the then existing deficits, authorized the county board and required it to investigate the deficits, advise with the county superintendent of education and the county board of education, and devise a plan for retiring such deficits. The county board was given the authority to promulgate rules and regulations having the effect of law, whereby the practice of creating deficits would be discontinued, and the Act declared that no school claims could be paid or disbursed except under the supervision of the county board in pursuance of the rules and regulations promulgated by it. It was even made a misdemeanor for any officer to approve any school claim or disburse any school money in violation of the rules and regulations promulgated by the county board. Since the going into effect of this Act, deficits have been reduced to approximately the sum of $86,000.00.

The plaintiff, Inman School District No. 26, and a few other school districts of Spartanburg County, pursuant to law, have levied special taxes for school purposes; and have

continuously conducted their educational affairs well within the limits of the income received; and for many years they have had to their respective credits on the books of the county superintendent of education considerable cash balances. Many other school districts of the county, on account of their deficits, have brought about the total deficits of the school system of the county, hereinbefore mentioned.

For some years the county board, acting under the authority of certain provisions of the General School Law (particularly the provisions now contained in Section 5427, 1932 Code), has borrowed on notes of the county, pledging taxes to be collected for school purposes, sums of money necessary to pay the school claims of the county; the sum so borrowed was placed in the hands of the county treasurer in the general school fund, and was paid out on claims approved by the county board of education, which claims were paid without reference to the financial condition of the districts presenting them, so that districts overdrawn or showing a deficit, nevertheless, had their claims approved and paid out of money thus borrowed. It was the plan of the county board, the superintendent of education, and the county board of education to prevent the increase of deficits and to retire those existing, and to permit the continued full time operation of all schools, whether the districts had funds or not, by paying the claims out of money borrowed and applying 10 per cent. of the respective district allotments to the curtailment of the respective deficits. On account of prevailing financial conditions, the county board has been unable to borrow in the present year. Upon the maturing of outstanding school notes, conceiving that all school taxes were pledged for their payment, the county board paid them, and used for that purpose all the cash balances to the credit of the plaintiff, school district, as well as all cash balances to the credit of other school districts. By carrying out the plan permitted under the Act of 1929, the county board has kept the payment of all claims paid out of funds

on behalf of any school district conservatively within the anticipated revenue for the respective fiscal years, and thereby they have prevented any increase in the existing deficits of school districts.

After applying the cash balances, the county board declared its plan and purpose to restore the cash balances out of the first school funds coming into its hands or into the treasury of the county.

Section 18-A of the General Appropriation Act of 1932 (37 St. at Large, p. 1586) authorized the State Department of Education and State Treasurer to issue notes for salaries of public school teachers, and to distribute them to the county superintendents upon their request in suitable denominations in amounts totaling the shares of public teachers' salaries due or owing by the State under the "6-0-1" law (Code 1932, § 5478 *et seq.*). Subdivision (c) prohibited the county superintendents from delivering notes to other than teachers or their assignees, though Section d-1 commanded that, where any county or district had paid any or all the aid therein appropriated, then the notes should be delivered to such county or district in refund of the sums so paid.

In intended compliance with the provisions of Section 18-A of the Appropriation Act, the State Department of Education and State Treasurer issued the notes contemplated therein and allocated them to the respective county superintendents, but, on account of more satisfactory arrangements negotiated by the fiscal agencies of the State, the same were all recalled and not used, sold, or discounted for any purpose. Instead of carrying out the plan and purpose of Section 18-A, the State authorities negotiated a loan under other provisions of law for general purposes. From the money so borrowed the respective counties have been paid 85 per cent. of the amounts due to them by the State under the "6-0-1" law, and this money is now in the hands

of the treasurer for Spartanburg County, and amounts to approximately $195,000.00.

Plaintiff contends in this action that it and the other school districts, whose cash balances have been applied to the payment of the operating expenses and teachers' salaries of the school districts which have spent more than their income, are entitled to have their respective cash balances restored and paid before such overdrawing districts participate to any extent in the moneys received from the State authorities for school purposes by Spartanburg County. The plaintiff demanded of the defendants that its cash balance be restored out of those funds. The defendants have refused the demand of the plaintiff, and have indicated their purpose to use the money received from the State authorities in discharging the obligations of the several school districts of the county to the school teachers on account of salaries due them.

The differences between the parties have resulted in the plaintiff asking this Court to enjoin the defendants from carrying out their indicated purposes.

As is often the case, because of special legislative enactments relating to the public school system, there are apparent inconsistencies in our laws as to the authority of State school officials, the county board of Spartanburg County, and the county board of education of that county. Questions are continually arising as to the determination of the laws relating to the public school system, due to the passage of special Acts, without the General Assembly taking into consideration the general laws relating to public schools. In this instance, though, as is usually true, the rules of statutory construction help to clear up seeming conflicts, and the Court is able to carry out the intention of the lawmaking body, for, we think, after all, there is no real inconsistency.

In passing upon the question before us, let us bear in mind that the General Assembly in 1924 passed the "6-0-1" school law, contained now in Sections 5478 *et seq.*, found

in Article 2 of title 31, 1932 Code, under the heading "State Aid." Under that law (Section 5478), the General Assembly was required to "make sufficient appropriation to pay the salaries of all school teachers in the public schools of the State for six months, according to the schedule outlined below. * * *" (The schedule refers to the salaries of teachers in the public schools.) The law (Section 5479) provided for the levy of a tax on all the taxable property of the State to carry out the provisions of Section 5478.

Under the provisions of the law relating to the powers and duties of the State Finance Committee (Sections 2196–2207, 1932 Code), that committee is given authority to borrow money for necessary expenses of the State government and facilitating the business of the State. By Section 2205 (Acts Feb. 28, 1929 [36 St. at Large, p. 240] and June 5, 1931 [37 St. at Large, p. 328]), the State Finance Committee was especially authorized to borrow in each year "on the credit of the State, so much money as it may deem necessary to meet the appropriation to be included in the appropriations for the current fiscal year for the payment of teachers' salaries in the public schools of the State for the six months' school term provided for by Sections 5478 to 5491. * * *" In that section, it is expressly declared, "all sums so borrowed shall be used exclusively for the purpose of paying teachers' salaries and the proceeds of all such loans are hereby appropriated to such purpose."

As we understand the agreed facts in the case at bar, the money involved here is a part of money borrowed by the State Finance Committee, under the provisions of the law referred to, for the purpose of paying teachers' salaries, and for no other purpose whatsoever. We understand further that the State Treasurer sent the money involved here, approximately $195,000.00, to the treasurer of Spartanburg County for the purpose of paying the salaries due by the State to the teachers in the public schools of Spartanburg County, under the law to which reference has been made.

The money was the money of the State, not the money of Spartanburg County, and not the money of any school district of Spartanburg County. The officials of Spartanburg County are simply agents of the State for the purpose of disbursing this money to the teachers of the public schools of Spartanburg County to whom the money is due by the State.

Clearly, it was never intended by the General Assembly in any of the special laws relating to Spartanburg County, to which attention has been directed, to authorize or permit the county board of Spartanburg County, or the county board of education of that county, or any other fiscal authority thereof, to use, expend, or disburse the moneys appropriated by the General Assembly for the payment of the obligations of the State to the public school teachers of Spartanburg County for any purpose other than that expressly declared.

The whole spirit and intention of the "6-0-1" school law is the payment by the State of the salaries of the teachers of the public schools for six months. The counties, or school districts in the counties, must provide for the payment of the teachers for any period beyond six months.

The county board of Spartanburg County, under the law, may have some authority as to the disbursement of moneys raised by the county, or the several school districts, for school purposes. That particular question is not involved here. But the county board has no authority as to the appropriation made by the State for the payment of teachers' salaries, except to see that their salaries are paid when the State furnishes the money. The view we have expressed will tend to harmonize the various legislative enactments, and it is the duty of the Court to harmonize them, if it is possible so to do.

The provisions of the appropriation Act of 1932, set out in the agreed statement of facts, relating to the execution of notes for the payment of the salaries of teachers, have no effect whatever, in our opinion, upon the question for

our determination. Under the provisions of that section, certain State officials were given the authority to execute notes in payment of the salaries due by the State to the teachers. That power was plainly a discretionary one, and the purpose of it, evidently, was to give the notes in case the State could not borrow the necessary money to pay in cash its obligations to the teachers.

The county board of Spartanburg County is to be congratulated, of course, upon its efforts to place the finances of the county, including the finances of the several school districts, in proper condition, looking forward to the operation of the schools on a cash basis. The members of the board are to be commended, also, for their desire to so act in financial matters that there could be no question as to the legality of their conduct.

It is unfortunate, because of the failure to observe the law in the past, some of the school districts of the county, which have taken care not to run into debt, are at this time made to suffer because other school districts have created illegal deficits. The Court is not in position, under the circumstances, to give relief to the districts that have observed the law. That matter is one for the General Assembly, and we are confident that body will soon see that justice is done in the premises.

The matter here is one of urgent necessity and should be decided quickly. For that reason we have not gone into a lengthy legal discussion to show that our view is correct. In fact, the law seems so clear to us that little, if any, discussion is necessary.

The petition for injunction is refused.

MESSRS. JUSTICES STABLER, CARTER and BONHAM, and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.